```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4               v.                        19-Cr-833 (SHS)

5    JOSEPH DEPAOLA,

6                    Defendant.
                                          Plea
7    ------------------------------x

8                                         New York, N.Y.
                                          February 2, 2021
9                                         12:05 p.m.

10   Before:

11
                     HON. SIDNEY H. STEIN,
12
                                          District Judge
13
                         APPEARANCES
14
     AUDREY STRAUSS
15        United States Attorney for the
          Southern District of New York
16   BY:  BENET KEARNEY
          Assistant United States Attorney
17
     ZMO Law PLLC
18        Attorneys for Defendant
     BY:  ZACHARY MARGULIS-OHNUMA
19        VICTORIA N. MEDLEY

20

21

22

23

24

25
```

1                   (Case called)

2                   THE DEPUTY CLERK:  Counsel, please State your names

3      for the record.

4                   MS. KEARNEY:  Good afternoon, your Honor.  Benet

5      Kearney for the United States.

6                   MR. MARGULIS-OHNUMA:  For Mr. Depaola, Zachary

7      Margulis-Ohnuma and Victoria Medley, 260 Madison Avenue, New

8      York, New York.  Mr. Depaola is virtually present with us.

9      Good afternoon, your Honor.

10                  THE COURT:  Good afternoon.

11                  MS. MEDLEY:  Good afternoon.

12                  THE COURT:  Mr. Depaola, you can see and hear me.

13     Correct?

14                  THE DEFENDANT:  Yes, sir.

15                  THE COURT:  I can see and hear you.

16                  Are you aware you've been charged with violations of

17     federal law?

18                  THE DEFENDANT:  Yes.

19                  THE COURT:  Have you consulted with your attorney

20     about those charges?

21                  THE DEFENDANT:  Yes.

22                  THE COURT:  And I understand you wish to enter a plea

23     of guilty to a charge in the indictment against you.

24                  Is that correct?

25                  THE DEFENDANT:  Yes, sir.

```
 1              THE COURT:  Do you understand, sir, that you have a
 2    right to appear physically before me in a courtroom when you
 3    enter your plea of guilty?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  And do you also understand you have a
 6    constitutional right or at least a statutory right to have your
 7    attorney standing with you physically in that courtroom when I
 8    sentence you?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  And do you understand that the COVID-19
11    pandemic has interfered with our ability to be all together and
12    in the courtroom?
13              THE DEFENDANT:  Yes.
14              THE COURT:  And have you discussed those issues with
15    your attorney?
16              THE DEFENDANT:  Yes, sir.
17              THE COURT:  You also have the right to give up your
18    right to stand before me physically in a courtroom and to have
19    your attorney next to you.
20              Do you understand that?
21              THE DEFENDANT:  Yes.
22              THE COURT:  And I understand that you've decided to
23    waive those rights and to proceed in this fashion -- for the
24    record, we're using a Skype for Business link -- and for me to
25    take your plea today remotely.
```

1           Is that correct?

2           THE DEFENDANT:  Yes.

3           THE COURT:  I want you to know that you have the right

4    to speak to Mr. Margulis-Ohnuma privately at any time.  So all

5    you have to do is say that you want to speak to your attorney

6    privately, and then we'll arrange for you to be able to speak

7    with him privately, either on a separate cell phone or in a

8    virtual room.

9           Do you understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  All right.  I do make the finding that we

12   must proceed, that the ends of justice permit us to proceed,

13   and this case cannot be further delayed without serious harm to

14   the interests of justice.

15          Now, I have a document in front of me.  It's dated

16   January 20.  It's six pages long.  I'm going to refer to it as

17   the plea agreement.

18          Mr. Margulis-Ohnuma, is this the plea agreement that

19   your client wishes to plead guilty to?

20          MR. MARGULIS-OHNUMA:  Yes, your Honor.

21          THE COURT:  Ms. Blakely, if you would administer the

22   oath, please, to the defendant.

23          (Defendant sworn)

24          THE DEPUTY CLERK:  Please state your full name and

25   spell your last name for the record.

 1                    THE DEFENDANT:  Joseph Depaola, D-e-p-a-o-l-a.

 2                    THE DEPUTY CLERK:  Thank you.

 3                    THE COURT:  Mr. Depaola, do you understand that you

 4     are now under oath and that if you answer any of my questions

 5     falsely, your false or untrue answers may later be used against

 6     you in another prosecution for perjury or for making a false

 7     statement?

 8                    THE DEFENDANT:  Yes, sir.  I do.

 9                    THE COURT:  How old are you, sir?

10                    THE DEFENDANT:  Thirty-one.

11                    THE COURT:  How far did you go in school?

12                    THE DEFENDANT:  I graduated high school.

13                    THE COURT:  Are you able to read, write, speak, and

14     understand English?

15                    THE DEFENDANT:  Yes, sir.

16                    THE COURT:  English is your native language; correct?

17                    THE DEFENDANT:  Yes.

18                    THE COURT:  Are you now or have you recently been

19     under the care of a doctor or a psychiatrist?

20                    THE DEFENDANT:  No, sir.

21                    THE COURT:  Have you ever been treated or hospitalized

22     for any mental illness or any type of addiction, including drug

23     or alcohol addiction?

24                    THE DEFENDANT:  Yes, sir.

25                    THE COURT:  When was that?

                    THE DEFENDANT:  I don't have the exact dates of my

stints in rehab.  But my sobriety date is May 1 of 2018.  So

sometime in 2017.

                    THE COURT:  So if I understand you correctly, you were

treated for alcoholism?

                    Is that correct?

                    THE DEFENDANT:  Yes.  Drug and alcoholism.  Yes.

                    THE COURT:  Drug and alcohol.

                    Did you go to a residential program at any point?

                    THE DEFENDANT:  Yes.  Yes.  I've been in -- it was

called Turning Point.  It was in Paterson, New Jersey.  I

believe I've been there two or three times.  And I've also been

in outpatient programs as well.

                    THE COURT:  And the last time was in 2017 or 2018?

                    THE DEFENDANT:  Yes.

                    THE COURT:  In the past 24 hours, sir, have you taken

any drugs, medicine, or pills or consumed any alcohol?

                    THE DEFENDANT:  No, sir.

                    THE COURT:  Is your mind clear today?

                    THE DEFENDANT:  Yes.

                    THE COURT:  Are you feeling all right?

                    THE DEFENDANT:  Yes.

                    THE COURT:  Do you have counsel here?

                    THE DEFENDANT:  Yes.

                    THE COURT:  Who is that?

1                  THE DEFENDANT:  Zach.

2                  THE COURT:  Mr. Margulis-Ohnuma, do you have any doubt

3     as to Mr. Depaola's competence to plead at this time?

4                  MR. MARGULIS-OHNUMA:  None whatsoever, your Honor.

5                  THE COURT:  Now, I've been told that you wish to enter

6     a plea of guilty.

7                  Is that true?

8                  THE DEFENDANT:  Yes, it is.

9                  THE COURT:  Have you had a full opportunity to discuss

10    your case with Mr. Margulis-Ohnuma and Ms. Medley?

11                 THE DEFENDANT:  I have.

12                 THE COURT:  And to discuss the consequences of

13    entering a plea of guilty?

14                 THE DEFENDANT:  Yes.  I have.

15                 THE COURT:  Are you satisfied with your attorneys and

16    their representation of you?

17                 THE DEFENDANT:  I am, your Honor.

18                 THE COURT:  On the basis of Mr. Depaola's responses to

19    my questions and my observations of his demeanor, I make the

20    finding that he is fully competent to enter an informed plea at

21    this time.

22                 Before I accept a plea from you, sir, I'm going to be

23    asking you certain questions.  Those questions are intended to

24    satisfy me that you --

25                 (Pause)

8

```
 1          THE COURT:  All right.  Let's proceed.

 2          I should have said before that this is of course a

 3    public proceeding and there can be other people involved -- not

 4    "involved" but other people listening.  There is a right to a

 5    public trial and at every material part of the proceeding.

 6          I don't know if we're being heard by the UN or

 7    whatever, but just be aware of what happened.  That is, we were

 8    listening to a talk.  It appeared to be a speech on the current

 9    political situation in Myanmar.  So this may be an open line,

10    but let's continue.

11          (Pause)

12          THE COURT:  Before I accept a plea from you,

13    Mr. Depaola, I'm going to be asking you certain questions that

14    are intended to satisfy me that you want to plead guilty

15    because you are actually guilty and that you understand

16    completely the consequences, which are substantial, that will

17    flow if you enter a plea today and if I accept it.

18          I'm going to be describing to you certain rights you

19    have under the Constitution and laws of the United States.

20    You're going to be giving up those rights if you enter a plea

21    of guilty today, sir.

22          Listen to me carefully.  And if you don't understand

23    anything that I'm saying or asking you, stop me and tell me

24    that.  I'll answer any questions you have.  You can speak to

25    your attorney privately.  You can ask him or her any questions
```

9

1    you want.

2              Do you understand all that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Under the Constitution and laws of the

5    United States, you have a right to a speedy and public trial by

6    a jury on the charges against you which are contained in

7    indictment 19 CR 833.

8              Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  If there were a trial, Mr. Depaola, you

11   would be presumed innocent, and the government would be

12   required to prove you guilty by competent evidence beyond a

13   reasonable doubt.  You would not have to prove you were

14   innocent at a trial.

15             Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  If there were a trial, a jury composed of

18   12 people selected from the Southern District of New York would

19   have to agree -- and they'd have to agree unanimously -- that

20   you are guilty.

21             Do you understand those rights?

22             THE DEFENDANT:  Yes.

23             THE COURT:  You have a right to be represented by an

24   attorney at trial and at every other stage of the proceedings.

25   If you cannot afford an attorney, one will be provided to you

 1    at no cost to you.

 2              Do you understand that?

 3              THE DEFENDANT:  Yes.

 4              THE COURT:  If there were a trial, you would have the

 5    right to see and hear all of the witnesses against you, and

 6    your attorney could cross-examine them.  You would have a right

 7    to have your attorney object to the government's evidence and

 8    offer evidence on your own behalf, if you so desired.  And you

 9    would also have the right to have subpoenas issued or other

10    compulsory process used to compel witnesses to testify in your

11    defense.

12              Do you understand those rights?

13              THE DEFENDANT:  Yes.

14              THE COURT:  If there were a trial, you would have the

15    right to testify if you wanted to, but no one could force you

16    to testify if you did not want to.  In addition, no inference

17    or suggestion of guilt could be drawn if you chose not to

18    testify at trial.

19              Do you understand those rights?

20              THE DEFENDANT:  Yes.

21              THE COURT:  Do you understand that by entering a plea

22    of guilty today, you're giving up each and every one of the

23    rights I've been listing for you, sir, and that you're waiving

24    those rights and there will be no trial in the action against

25    you?

1          THE DEFENDANT:  Yes, your Honor.  I do.

2          THE COURT:  Do you understand that you can change your

3    mind right now and refuse to enter a plea of guilty?

4          You don't have to enter a plea of guilty if you do not

5    want to for any reason.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Have you received a copy of the indictment

9    in this case?

10          THE DEFENDANT:  Yes, I have.

11          THE COURT:  Did you read it?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Did you discuss it with your attorneys?

14          THE DEFENDANT:  Yes.  We have.

15          THE COURT:  You have the right to have me read that

16    indictment right now.  Or if you don't want me to, you can

17    waive my reading of it.

18          Do you want me to read it, or no?

19          THE DEFENDANT:  No.  Thank you.

20          THE COURT:  All right.  I accept that as a knowing and

21    voluntary waiver of the right to have the indictment read in

22    open court.  And because of the COVID-19 pandemic and the fact

23    that this is a public line, this is deemed to be open court.

24          Do you understand that you're charged in Count One

25    with participating in a conspiracy to commit wire fraud in

connection with the conduct of telemarketing in violation of 18

U.S. Code, Sections 1349 and 2326?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that if you do not plead

guilty, the government would have to prove each and every part

or element of the charge in that indictment beyond a reasonable

doubt?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Ms. Kearney, set forth the

elements, please, of Count One.

MS. KEARNEY:  Yes, your Honor.  If we had proceeded to

trial on Count One, the government would have been required to

prove beyond a reasonable doubt:

First, that two or more persons in some way or manner

agreed to try and accomplish a common and unlawful plan to

commit wire fraud; and second, that the defendant knew the

unlawful purpose of that plan and willfully joined in it.

With respect to the wire fraud object, that has three

elements:

First, that there was a scheme or artifice to defraud

or to obtain money or property by means of false and fraudulent

pretenses, representations, or promises.

Second, that the defendant knowingly and willfully

participated in that scheme.

And third, that in the execution of that scheme, the

1    defendant used or caused the use of interstate wires.

2           Additionally, under Section 2326, the government would

3    be required to prove that the offense was committed in

4    connection with telemarketing and that it either victimized ten

5    or more people over the age of 65 or that it targeted people

6    over the age of 65.

7           The government would also be required to prove venue

8    in the Southern District of New York by a preponderance of the

9    evidence.

10          THE COURT:  Do you understand, Mr. Depaola, those are

11   the elements the government has to prove, all of them beyond a

12   reasonable doubt, except for the element, or the question

13   rather, of venue, which the government's burden is to prove by

14   a preponderance of the evidence?

15          Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do you understand that the crime to which

18   you're entering a plea of guilty, that is, Count One, carries a

19   maximum term of imprisonment of 30 years, a maximum term of

20   supervised release of 5 years, a maximum fine of the greatest

21   of $250,000 or twice the gross pecuniary gain derived from the

22   offense or twice the gross pecuniary loss to individuals other

23   than you resulting from the offense, and a $100 mandatory

24   special assessment?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Now, in describing to you just now what

2     the maximum penalty was, I said that part of that maximum

3     penalty was five years of supervised release.

4          Supervised release, sir, means you're going to be

5     subject to monitoring upon your release from prison.  And that

6     monitoring is to be under terms and conditions which could lead

7     to your re-imprisonment without a jury trial for all or part of

8     the term of supervised release and without credit for time

9     previously served on post-release supervision if you violate

10    any term or condition of supervised release.

11         Do you understand that?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Do you also understand that I can order

14    restitution to anyone injured as a result of your criminal

15    conduct?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand that if I accept your

18    guilty plea today, sir, and determine you to be guilty of Count

19    One, that determination will deprive you of such valuable civil

20    rights as the right to vote, the right to hold public office,

21    the right to serve on a jury, and the right to possess any kind

22    of firearm?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Now, Mr. Margulis-Ohnuma, I assume -- I

25    shouldn't assume.

```
 1              Is your client a United States citizen?

 2              MR. MARGULIS-OHNUMA:  Yes.  He is, your Honor.

 3              THE COURT:  All right.  Thank you.

 4              Mr. Depaola, under current law, there are sentencing

 5    guidelines that I have to use when applying the factors set

 6    forth in 18 U.S. Code, Section 3553(a) to determine what your

 7    sentence is going to be in this case.

 8              Have you talked to your attorneys about the sentencing

 9    guidelines?

10              THE DEFENDANT:  Yes, I have.

11              THE COURT:  Do you understand that I won't be able to

12    determine what the appropriate guideline range is until after I

13    receive a presentence report that's going to be completed by

14    the probation office?

15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  You're going to be interviewed by them,

17    sir, and your attorneys will be able to be there.  I need you

18    to give them accurate and complete information because I read

19    that report very carefully.

20              And you and your attorneys and the government will be

21    able to file any objections to the report prior to sentencing,

22    and I'll adjudicate those objections, if any.  But do give them

23    honest and complete information.

24              Do you understand that?

25              THE DEFENDANT:  Yes, I do.
```

1          THE COURT:  Now, after I receive that report and after

2     I receive any information you and your lawyers and the

3     government for that matter want to give me, I'll determine what

4     the guideline range is in this case.

5          But even after I do that, I can impose a sentence that

6     is higher than the guidelines, in other words, sentence you to

7     more prison than the guidelines call for, or for that matter,

8     fewer months in prison, a lower sentence, than the guidelines

9     call for based on a departure from the guidelines.

10          Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Even after I do that, I then have to apply

13     all of the factors in Section 3553(a) to determine what a fair,

14     reasonable, and appropriate sentence is and one that's

15     sufficient but not greater than necessary to meet the ends of

16     the criminal justice system.

17          Do you understand that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Now, do you understand that if you're

20     sentenced to prison, the system of parole that used to exist no

21     longer does?

22          Parole has been abolished.  So if I sentence you to

23     prison, you will serve that term in prison.  You will not be

24     released any earlier on parole.

25          Do you understand that?

```
1                THE DEFENDANT:  I do, sir.

2                THE COURT:  Do you understand that if anyone has

3      attempted to tell you what your sentence is going to be or even

4      if you think you know what your sentence is going to be,

5      everybody could be wrong?

6                Do you understand that?

7                THE DEFENDANT:  I do.  Yes.

8                THE COURT:  And the reason is I'm the one who's going

9      to sentence you.  And I don't know what your sentence is going

10     to be because I don't know enough about you -- about your

11     crime; your upbringing; your criminal record, if any; your

12     finances; your role in this crime; your education -- a lot of

13     things.

14               I need to know much more about you and the crime that

15     you've committed before I can determine what a fair sentence

16     is.  So since I'm going to sentence you and I don't know what

17     you're going to be sentenced to, nobody else can know what

18     you're going to be sentenced to.

19               Do you understand that?

20               THE DEFENDANT:  Yes, sir.

21               THE COURT:  And if you are in fact sentenced to

22     something by me that's different than what anyone has told you

23     it could be or will be or should be or even if it's different

24     from what you think it's going to be, you still are going to be

25     bound to this guilty plea, sir.  You won't be allowed to
```

 1    withdraw it, and you will serve that term in prison.

 2              Do you understand?

 3              THE DEFENDANT:  I understand.

 4              THE COURT:  Now, at the beginning of this allocution,

 5    I discussed the January -- I referred to the January 20 letter,

 6    which I'll call the plea agreement.  And the copy that I have

 7    on page 6 has what appears to be your signature and that of

 8    Mr. Margulis-Ohnuma.  And it's dated January 27.

 9              Did you sign that agreement, sir?

10              THE DEFENDANT:  Yes, I did, your Honor.

11              THE COURT:  Did you read it before you signed it?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Did you discuss it with your attorneys

14    before you signed it?

15              THE DEFENDANT:  Yes.  We did.

16              THE COURT:  Did you fully understand it, sir, at the

17    time you signed it?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  Does this letter agreement constitute your

20    complete and total understanding of the entire agreement

21    between the government, your attorney, and yourself?

22              THE DEFENDANT:  Yes, it does.

23              THE COURT:  Is everything about your plea and sentence

24    contained in this agreement?

25              In other words, are there any side arrangements I

1   should know about?

2           THE DEFENDANT:  No, sir.

3           THE COURT:  Okay.  Is everything that I need to know

4   about your plea and sentence contained in this document?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Has anyone offered you any inducements or

7   threatened you or forced you to plead guilty or to enter into

8   the plea agreement?

9           THE DEFENDANT:  No, sir.

10          THE COURT:  Now, do you understand that in this plea

11  agreement, you agreed to forfeit to the United States $100,000

12  in United States currency?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that in this agreement,

15  you have agreed to make restitution in a sum ordered by me?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Now, do you happen to have a copy of the

18  agreement in front of you?

19          THE DEFENDANT:  I don't, your Honor.  I can pull it

20  up.

21          THE COURT:  That's all right.  You don't have to have

22  it.

23          Mr. Margulis-Ohnuma, do you have one?  You're muted,

24  sir.

25          MR. MARGULIS-OHNUMA:  Sorry.  I do, your Honor.

1          THE COURT:  If you'll turn to page 2, you'll see that

2     the defendant is referred throughout with the pronoun "her" --

3     "her" allocution, "her" intentional, imposed on "her."This is

4     simply a conspiracy by Ms. Kearney and Ms. Fletcher.

5          But apart from that, I take it that you accept the

6     fact that the reference is to "him," meaning the defendant.

7          MR. MARGULIS-OHNUMA:  Yes, your Honor.

8          THE COURT:  Obviously just so the record is clear,

9     it's not a conspiracy by Ms. Kearney and Ms. Fletcher.  It's

10    simply a typographical error, or I may say that it's the

11    government using a form.

12         MS. KEARNEY:  That's correct, your Honor.  I can

13    confirm that was an oversight.

14         THE COURT:  That's all right.

15         Now, do you also understand that in this agreement,

16    you, Mr. Depaola, otherwise known as "him" or "he," have

17    stipulated to the fact that the guideline range is 46 to 57

18    months?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Do you understand that in this agreement,

21    you've waived your right actually to file an appeal and to file

22    a collateral attack on the sentence if I sentence you to 57

23    months in prison or fewer months?

24         THE DEFENDANT:  Yes.  I understand.

25         THE COURT:  Do you understand that the intent of this

1    agreement is to waive all defenses based on the statute of

2    limitations?

3              THE DEFENDANT:  Yes, I do.

4              THE COURT:  And do you understand that because the

5    system of parole that used to exist in the federal criminal

6    justice system no longer exists -- parole has been abolished.

7              Because of that, if I sentence you to prison or when I

8    sentence you to prison, you will have to serve that whole term

9    in prison.  You won't be released any earlier on parole.

10             Do you understand that?

11             THE DEFENDANT:  Yes.  I understand.

12             THE COURT:  Mr. Margulis-Ohnuma, do you know of any

13   valid defense that would prevail at trial or know of any reason

14   why your client should not be permitted to plead guilty?

15             MR. MARGULIS-OHNUMA:  I do not, your Honor.

16             THE COURT:  In your view, sir, is there an adequate

17   factual basis to support Mr. Depaola's plea of guilty?

18             MR. MARGULIS-OHNUMA:  Yes.

19             THE COURT:  Government, is there an adequate factual

20   basis, in the view of the government, to support this

21   defendant's plea of guilty?

22             MS. KEARNEY:  Yes, your Honor.

23             THE COURT:  All right, Mr. Depaola.  Tell me now what

24   you did in connection with Count One, that is, the crime to

25   which you're entering a plea of guilty.

```
 1              THE DEFENDANT:  So from June of 2018 till roughly
 2   August of 2019, I was a part of a telemarketing floor in New
 3   Jersey where we were selling business opportunities to people
 4   whom I knew were not going to make money with those
 5   investments.  I also knew that ten or more of them were over
 6   the age of 55.
 7              THE COURT:  Where was the floor?
 8              THE DEFENDANT:  In Englewood, New Jersey, as well as
 9   Montvale, New Jersey.
10              THE COURT:  Were any of the calls made into Manhattan
11   or the Southern District of New York?  Your calls.  If you
12   know.
13              THE DEFENDANT:  I'm not positive.  I would assume so,
14   your Honor.
15              THE COURT:  Without an assumption,
16   Mr. Margulis-Ohnuma, what's the venue connection here?
17              MS. KEARNEY:  If I may, your Honor.
18              THE COURT:  Yes.
19              MS. KEARNEY:  Certain of the victims of the total
20   conspiracy were located in the Southern District of New York.
21   Off the top of my head, I'm thinking of one in the Bronx.
22              THE COURT:  Mr. Depaola, when you did these things,
23   did you know that what you were doing was wrong and illegal?
24              THE DEFENDANT:  Yes, sir.
25              THE COURT:  Now, you said you were selling business
```

1    opportunities, biz ops; correct?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And you were selling them for money.  You

4    were requiring investments by these people.

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Were these people primarily older people?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  And you knew that biz ops were

9    non-existent.  That's not the word.

10             That these people would never make money from the

11   so-called "busy opportunities" that you were selling them.

12             Is that right?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  But you continued to sell it anyway.

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  And you kept on calling them to make sure

17   that they would give you as much money as you could get.

18             Correct?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Were you a floor salesman?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Is there anything else,

23   Mr. Margulis-Ohnuma, that you want on the allocution?

24             MR. MARGULIS-OHNUMA:  No.  No, your Honor.

25             THE COURT:  Ms. Kearney?

1          MS. KEARNEY:  No.  Thank you.

2          THE COURT:  What's the evidence, Ms. Kearney, that you

3   have against this defendant?

4          MS. KEARNEY:  With respect to Mr. Depaola, your Honor,

5   the evidence would consist of the testimony of victims of the

6   wire fraud, as well as cooperating witnesses.

7          It would also consist of evidence that was obtained

8   from searches that were executed on the two telemarketing

9   floors, as well as email accounts that were used in connection

10  with the telemarketing scheme.

11         THE COURT:  Mr. Depaola, how do you now plead to the

12  charge in Count One?  Guilty or not guilty?

13         THE DEFENDANT:  Guilty, your Honor.

14         THE COURT:  Are you pleading guilty, sir, because you

15  are guilty?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Are you pleading guilty voluntarily and of

18  your own free will?

19         THE DEFENDANT:  Yes, sir.  I am.

20         THE COURT:  Because you acknowledge you are guilty as

21  charged, because I find you know your rights and are waiving

22  them knowingly and voluntarily, because I find your plea is

23  entered knowingly and voluntarily and is supported by an

24  independent basis in fact containing each of the essential

25  elements of the offense, I accept your guilty plea,

1    Mr. Depaola, and I adjudge you guilty of Count One.

2              Just a moment.

3              (Pause)

4              THE COURT:  Ms. Blakely, could you give me a

5    sentencing date and make it on a day where we have other people

6    in this conspiracy, this fraud.

7              THE DEPUTY CLERK:  We can do April 26 at 3:30.

8              THE COURT:  All right.  I'm going to set the date for

9    sentencing at April 26, 2021, at --

10             Did you say 3:30?

11             THE DEPUTY CLERK:  Yes.

12             THE COURT:  At 3:30.  Let's work on the assumption

13   that it will be in my courtroom at 500 Pearl Street.  If not

14   and if there's a waiver and consent, we'll do it virtually.

15             MR. MARGULIS-OHNUMA:  Judge, if I may.  I anticipate

16   being on trial at that time if things open up like we're hoping

17   they will.  But I think, given the vagaries of the PSR process,

18   I would let you know when it's closer to the date if we need to

19   adjourn that.

20             THE COURT:  I understand that.  Fine.  Given the

21   vagaries of when things go to trial also because that other

22   trial may not proceed.

23             Is it federal or state?

24             MR. MARGULIS-OHNUMA:  It's a federal case in the

25   Eastern District.  The defendant has been in prison for over

1    two years and has been pushing very hard to be the first trial

2    out of the box when things open up.  Hopefully it will proceed.

3              THE COURT:  Just keep me informed.

4              Government, is there any application here in regard to

5    bail?

6              MS. KEARNEY:  No.  There's not.

7              THE COURT:  Mr. Depaola, do you understand that you're

8    going to remain out on bail?

9              I'm not remanding you at this time.  The government is

10   not seeking your remand.  I see no reason to do so.  So you're

11   going to stay out on bail, but you have to follow all of the

12   conditions of your release up until now.

13             Do you understand that?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  All right.  I don't have any reason to

16   think that you will violate any condition now.  Up to now,

17   nothing has been brought to my attention.  Just make sure it

18   continues that way.

19             Do you understand?

20             THE DEFENDANT:  Yes, I do, sir.

21             THE COURT:  Is there anything else, Ms. Kearney?

22             MS. KEARNEY:  No.  Thank you very much, your Honor.

23             THE COURT:  Mr. Margulis-Ohnuma or Ms. Medley,

24   anything?

25             MR. MARGULIS-OHNUMA:  No, your Honor.  Thank you.

1            THE COURT:  All right.  I thank all of you.  We'll see

2    you on the date of sentencing or any adjourned date that I set.

3    Thank you.  The Court is leaving the call.

4            MR. MARGULIS-OHNUMA:  Thank you.

5            THE DEFENDANT:  Thank you.

6            (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25